**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

ELICA LUCEYDI VASQUEZ AGUILAR,

Petitioner,

v. Case No. 26-1001-PRW

WARDEN, DIAMONDBACK CORRECTIONAL FACILITY, et al.,

Respondents.

**ORDER**

Before the Court is Petitioner's Second Motion for Temporary Restraining Order (Dkt. 13), seeking an order directing Respondents to transfer Petitioner from Diamondback Correctional Facility to a hospital with dedicated neurology and hematology departments or release her to the care and custody of her sponsor in Tulsa, Oklahoma. For the following reasons, the Court **DENIES** the Motion (Dkt. 13).

***Background***

The Motion (Dkt. 13) arises out of a habeas petition, filed pursuant to 28 U.S.C. § 2241(c)(3).[1] Petitioner is a 19-year-old Guatemalan citizen who entered the United States on April 13, 2023. On April 16, 2026, ICE detained Petitioner, who suffers from anemia.[2] Petitioner's motion states that on August 9, 2026, she suffered a medical crisis consistent

[1] "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).

[2] Pet. (Dkt. 1), at 2.

with a transient ischemic attack (TIA) or other serious cerebrovascular event, and experienced symptoms of a stroke, including severe headache, confusion, weakness, vision problems, and numbness.[3] Such an event is notable because it is a warning sign regarding a potential future stroke, which may be life-threatening, and because Diamondback Correctional Facility, where Petitioner is detained, may not be equipped to handle neurological emergencies or provide the specialized care required for a post-TIA patient.[4]

On August 27, 2026, Respondents filed a Response (Dkt. 15) in which they attached an affidavit from Justin Mills, RN and Health Services Administrator at Diamondback Correctional Facility (Dkt. 15-1).[5] Mills reviewed Petitioner's medical records, and explained that Petitioner had experienced "anxiety-induced syncope" on August 9, rather than a TIA. Petitioner was then transported to the Mercy Hospital Watonga Emergency Department where she "underwent comprehensive cardiac and neurological evaluations," and "no abnormal findings were identified."[6] Petitioner has continued to receive medical care and observation, and as of the Response date, had "no diagnostic documentation indicating a stroke or concerns suggesting a stroke/TIA."[7] According to Mills, Petitioner

[3] Mot. (Dkt. 13), at 2.

[4] *Id.* at 3.

[5] Resp. (Dkt. 15-1), at 1–2.

[6] *Id.* at 2.

[7] *Id.* at 2.

has been provided medical services consistent with recognized community standards of care.[8]

Respondents also submit that Petitioner's Motion, although ostensibly *pro se*, is likely to have been authored by a third party, Gisell Corvacho Pereira, due to its potential similarities to other *pro se* filings in *Timarán Restrepo v. Warden*, Case No. CIV-26-661-G (W.D. Okla.), which may have also been authored by Ms. Pereira.[9] This Court previously filed an order directing Petitioner to file an affidavit stating the extent of attorney involvement in this case (Dkt. 6), after Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1), Declaration in Support of Habeas Corpus and Request for Emergency Relief (Dkt. 2), and Motion for Temporary Restraining Order (Dkt. 3), were all sent from an address in Florida, despite Petitioner being in custody in Oklahoma. Petitioner filed a declaration (Dkt. 7) denying that she received any attorney assistance in legal research or drafting, but stating that Ms. Pereira is a "friend" who Petitioner asked to purchase a money order to pay the Court's filing fee and mail documents to the Court on Petitioner's behalf, due to Petitioner's limited financial resources and ability to send mail while in confinement.

## ***Legal Standard***

Temporary restraining orders ("TRO") and preliminary injunctions are extraordinary remedies meant to preserve the status quo while the parties litigate the merits of the movant's underlying claims.[5] The Court may enter a TRO or preliminary injunction

[8] *Id.* at 3.

[9] *Id.* at 2–7.

if (1) Petitioner is substantially likely to succeed on the merits; (2) Petitioner will suffer irreparable injury if the injunction is denied; (3) Petitioner's threatened injury outweighs the threatened harm to the party whom she seeks to enjoin; and (4) the injunction would not be adverse to the public interest.[6] As the movant, Petitioner bears the burden to establish that each of these factors tip in her favor.[7]

The Tenth Circuit identifies three kinds of disfavored preliminary injunctions: those that (1) disturb the status quo; (2) are mandatory as opposed to prohibitory; and (3) afford the movant substantially all the relief she may recover at the conclusion of a full trial on the merits.[8] "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[9] Here, Petitioner requests a mandatory injunction that would alter the status quo. Because such injunctions are "disfavored," Petitioner must make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms, and may not rely on [the Tenth Circuit's] modified likelihood-of-success-on-the-merits standard."[10]

## *Discussion*

### I. Petitioner is unlikely to succeed on the merits.

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs."[10] "[T]o state a claim for deliberate indifference, a plaintiff must allege that an official acted (or failed to act) in an objectively unreasonable

[10] *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020).

manner and with subjective awareness of the risk."[11] "To establish the objective component, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension."[12] "A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[13] On the other hand, "[t]he subjective component requires Plaintiff to establish that a medical official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."[14] A plaintiff "must allege that an actor possessed the requisite intent" to state a deliberate indifference claim.[15]

Petitioner has failed to demonstrate that she has an objectively serious medical need to be transferred from Diamondback Correctional Facility to another facility more capable of treating patients who have experienced a near-stroke or TIA. Petitioner's account of the medical event on August 9, 2026, is contradicted by Mills' affidavit. Even if Petitioner were likely to succeed on the objective prong of her Fourteenth Amendment claim, however, she would not be likely to succeed on the subjective prong. Although Petitioner has stated that she has not been transferred to a hospital capable of providing her the treatment she needs,

---

[11] *Id.*

[12] *Id.* at 990 (quotation omitted).

[13] *Id.* (quotation omitted).

[14] *Id.* (quotation omitted).

[15] *Id.* at 992.

she has not shown that a particular medical official had actual knowledge of the risk of stroke to Petitioner and intentionally disregarded it.

Additionally, a federal habeas petition is an improper vehicle for Petitioner to bring her deliberate indifference claim, which instead must be brought under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971), because Petitioner has only attacked the conditions of her confinement, and not its "fact or duration."[16] While Petitioner's motion states that "[i]mmediate [r]elease is the only [e]ffective [r]emedy" for the alleged deprivation of necessary medical care, the basis of Petitioner's claim is not that her detention itself violates the Fourteenth Amendment, but that Diamondback Correctional Facility is unable to treat her condition.[17] Notably, Petitioner also requests in the alternative that she merely be transferred to a hospital with dedicated departments for treating post-TIA patients, rather than released from custody.

## II. Petitioner has not demonstrated irreparable harm.

Petitioner's Motion (Dkt. 13) has not demonstrated the possibility of irreparable harm for the same reason that she is unlikely to succeed on the objective prong of her Fourteenth Amendment claim.

## III. The balance of the equities and public interest tip in the Government'sfavor.

The harm to Petitioner is insubstantial, because she has not demonstrated an objectively serious risk of stroke in the near future. The harm to the Government is the

[16] *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011).

[17] Mot. (Dkt. 13), at 5.

administrative burden of maintaining custody while Petitioner receives treatment at a separate facility, and the risk of flight during Petitioner's treatment. If Petitioner were released into the care of her sponsor, the harm would be a heightened risk of flight.

***Conclusion***

Because Petitioner has not demonstrated that a likelihood of success or that the equities weigh in her favor, the Court **DENIES** the Motion (Dkt. 13). The Court also **ORDERS** Petitioner to file an affidavit with the Court, on or before September 24, 2026, stating the extent of attorney involvement in this case. In particular, Petitioner must state whether an attorney helped prepare her Second Motion for TRO (Dkt. 13). If attorneys were involved in this case, Petitioner must identify their names, addresses, and emails. If Petitioner fails to comply with this order, then the Court may dismiss her case without prejudice.

**IT IS SO ORDERED** this 10th day of September 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE